EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
SHARON G. BIRENBAUM
Deputy Attorney General
State Bar No. 94925
    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-3664
    Telephone: (415) 703-5870
    Fax: (415) 703-1234
    Email: sharon.birenbaum@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **BETTY A. CHEEKS,** | C 07-6291 SI |
| Petitioner, | |
| v. | |
| **DAWN DAVISON, Warden, California Institute for Women,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | SHARON G. BIRENBAUM
Deputy Attorney General
6 | State Bar No. 94925
  455 Golden Gate Avenue, Suite 11000
7 | San Francisco, CA 94102-3664
  Telephone: (415) 703-5870
8 | Fax: (415) 703-1234
  Email: sharon.birenbaum@doj.ca.gov
9 | Attorneys for Respondent

10 |                IN THE UNITED STATES DISTRICT COURT

11 |             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 |                      SAN FRANCISCO DIVISION

13 |

| | |
|---|---|
| **BETTY A. CHEEKS,** | C 07-6291 SI |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| **DAWN DAVISON, Warden, California Institute for Women,** | |
| Respondent. | |

20 |        Petitioner pleaded guilty to eleven counts of issuing a check with insufficient funds and

21 | welfare fraud.  She was sentenced to a ten-year, four-month prison term, which was the maximum

22 | prison term pursuant to the plea bargain.  Petitioner contends that the trial court violated her right

23 | to due process and to jury trial when it imposed an upper base term sentence for welfare fraud.

24 | There is no merit to her contention.[1/]

25 | _____

26 |        1.  Petitioner  named the respondent as "People."  In its order to show cause, this Court
recognized that this was not a proper respondent, and directed petitioner to amend her petition to
27 | name the appropriate respondent.  Petitioner is an inmate at the Malibu Conservation Camp run by
the California Institute for Women.  Dawn Davison is the warden of the California Institute for
28 | Women, and we therefore name her as respondent.

Mem. of Points and Authorities in Opp. to Petition for Writ of Habeas Corpus - Cheeks v. People - C 07-6291 SI

1

1

## STATEMENT OF THE CASE

2          On April 5, 2005, the Mendocino County District Attorney filed an amended information

3    charging petitioner with twenty-one counts of second degree burglary ( Cal. Pen. Code, §§ 459,

4    460(b), Counts 1, 4, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43), two counts

5    of obtaining and using another's personal identifying information (Cal. Pen. Code, § 530.5(a),

6    Counts 2 and 5), two counts of forgery (Cal. Pen. Code, § 470(d), Counts 3 and 6), one count of

7    possession of a completed forged paper (Cal. Pen. Code, § 475(c), Count 8), and eighteen counts of

8    issuing checks with insufficient funds (Cal. Pen. Code, § 476a(a), Counts 10, 12, 14, 16, 18, 20, 22,

9    24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44).   The information further alleged that at the time of the

10   commission and attempted commission of several of the above offenses, petitioner was on bail in

11   another case within the meaning of section 12022.1.  CT 219-44.[2]

12          On April 12, 2005, petitioner pleaded guilty to eleven counts of issuing checks with

13   insufficient funds (counts 18, 20, 22, 24, 30, 32, 34, 36, 40, 42, and 44).  Count 1 of the information

14   was amended to charge a violation of welfare fraud (Cal. Welfare & Institutions Code, § 10980), and

15   petitioner also pleaded guilty to that count.  CT 249-59.   Counts 5, 6, 8, 10, 12, 14, 16, 26, 28, and

16   38 were dismissed with a *Harvey*[3] waiver for restitution only.   The remaining counts and special

17   allegation were dismissed.  CT 250, 260-62.  The parties agreed that petitioner's maximum prison

18   exposure would be ten years, four months.  CT 251.

19          On May 16, 2005, petitioner was sentenced to the maximum prison term pursuant to the

20   plea agreement – ten years, four months.  The sentence consisted of the upper three-year term for

21   the welfare fraud as the base term, with consecutive 8 month terms (one-third the mid-term) for each

22   of the eleven counts of writing checks with insufficient funds.  CT 323-325.

23          Petitioner appealed, asserting that the imposition of the aggravated term violated her Sixth

24   Amendment right to jury trial and due process, citing *Blakely v. Washington*, 542 U.S. 296 (2004).

25   _____

26          2.  "CT" refers to the clerk's transcripts of petitioner's state court proceedings and "RT"
     refers to the reporter's transcripts of the state court proceedings.  Unless otherwise noted, all
27   statutory references are to the California Penal Code.

28          3.  *People v. Harvey*, 25 Cal.3d 754 (1979).

1    Exhs. C, D.  In an unpublished opinion filed on May 1, 2006, the California Court of Appeal

2    affirmed the conviction based on *People v. Black*, 35 Cal.4th 1238 (2005).  Exh. E.  On July 12,

3    2006, the California Supreme Court denied review without prejudice to any relief which petitioner

4    might be entitled after the United States Supreme Court rendered its decision in *Cunningham v.*

5    *California*, No. 05-6551.  Exhs. F, G.

6         On February 26, 2007, the United States Supreme Court granted petitioner's petition for

7    writ of certiorari, vacated the judgment, and remanded the case to the California Court of Appeal

8    for further consideration in light of its decision in *Cunningham v. California*, 549 U.S. ___, 127

9    S.Ct. 856 (2007).  Exh. H.

10        On April 19, 2007, the California Court of Appeal recalled the remittitur, and ordered

11   additional briefing.  Exh. I.  On June 21, 2007, after further briefing (Exhs. J, K), the Court of

12   Appeal affirmed the judgment.  Exh. L.  On September 12, 2007, the California Supreme Court

13   denied review.  Exhs. M, N.

14        On December 12, 2007, petitioner filed the instant petition.

15                          **STATEMENT OF FACTS**

16        Petitioner's conviction was the result of a guilty plea.  The following facts underlying the

17   offenses are taken from the probation report:

18        **Count One (Welfare Fraud)**

19        On December 8, 2004, an officer was dispatched to call a subject from Mississippi,
     Kristian McMiller, regarding a possible identity theft report.  McMiller advised that in
20   August of 2004, her wallet was lost or stolen in Ukiah.  She said she had been residing
     with Betty Cheeks at 621 Willow Avenue #C, at the time.  McMiller stated she reported
21   it to the Ukiah Police Department when she discovered it was gone.  She explained that
     she had her Mississippi Identification Card and Social Security Number in the wallet, as
22   well as her ATM card, which she canceled.
         McMiller . . . moved back to Mississippi from Ukiah in August 2004, shortly after
23   the loss of her wallet.  She . . . had been receiving Social Services while she resided in
     Ukiah.  Once in Mississippi, she contacted them and canceled the services.  McMiller
24   advised that on today's date, she decided to call Social Services and make sure her
     services had been canceled.  She said she learned her services benefit card was still in
25   activation and had been recently used.  McMiller explained to the Social Services
     Workers her card was being used by an unknown person.  She was advised by them to
26   contact police.
         The officer went to the Department of Social Services and spoke with the service
27   technician.  The service technician stated she was not aware, until today, that Ms.
     McMiller had moved from California. . . .
28       The service technician went on to explain the department issues cards which operate

1   much like a "debit card", to clients.  They are able to use the cards for cash transactions
2   for food or actual cash.  She showed the officer some of the transactions that had taken
    place in November with McMiller's card.  The technician informed the officer that once
3   a client obtains a card, they can change their PIN number by telephone, as long as they
4   have all their identifying information.  She said she would not know who was actually
    making the transaction unless the subject came into the department, face to face, with a
    problem.

5       Later that same day, the officer received a telephone call from the technician stating
    a subject claiming to be McMiller had left a voicemail message for her regarding her debit
6   card not working.  The subject had provided a telephone number to call back.  The officer
7   had the technician call the subject back on December 9, 2004.  The technician advised him
    she called the number back and asked to speak with McMiller, but the person who
    answered the telephone told her she had the wrong number.

8       On December 10, 2004, the officer received a telephone call from the Social Services
    Department who indicted a subject had come into the department and was attempting to
9   obtain a new benefit card in the name of Kristian McMiller.  He asked the technician to
    have one of the Welfare Fraud Investigators detain her until he arrived.  Upon arrival, the
10  officer spoke with the subject, Betty Cheeks, who he knew from previous contacts.
    Cheeks stated she had come to the department at the request of her niece, Kristian
11  McMiller, to get a new welfare benefits card.  She said the old card did not work and her
    niece was in Virginia dealing with a divorce.  Cheeks stated her niece had called earlier
    and was directed to come into the department to pick up the new card.

12      The officer asked Cheeks if she had ever used the card, and she said she had not.
    Cheeks claimed McMiller still lived with her in Ukiah, but was out of town and asked her
13  to get the card for her.  The officer learned, through further investigation, that Cheeks had
    initially told Social Service works she was Kristian McMiller, until further confrontation
14  by the Welfare Fraud Investigator.  The officer arrested Betty Cheeks for fraudulent use
    of a benefits card.  Cheeks refused to discuss the matter with the officer, after being
15  advised of her Miranda Rights.  The officer later contacted Kristian McMiller, who stated
    she never gave Cheeks permission to use her card nor asked her to go pick up a new one
16  for her.  McMiller said she had not been in Ukiah since August of 2004.

17      **Counts Relating To Issuing Checks With Insufficient Funds**

18      The following is a synopsis of Ukiah Police Department reports #05-0167 and #05-0177:

19      Several reports were taken by officers regarding the passing of checks with non-
    sufficient funds at local businesses (including several check-cashing facilities), between
20  the dates of October 18, 2004 and January 27, 2005.  The suspect involved in these
    incidents was Betty Annice Cheeks. The checks had been written to numerous local
21  businesses and/or individuals for amounts ranging from $13.00, to as much as $450.00
    (which was a type of Global check card used at Shodakai Casino).  Most of the checks
22  were written against Ms. Cheeks account at Mendo-Lake Credit Union.  Several
    statements had been sent to Cheeks by Mendo-Lake Credit Union, informing her she was
23  overdrawn; however, she continued to write checks anyway.  Telephone contact had also
    been made with Ms. Cheeks, with negative results.  After being overdrawn, for a
24  significant amount of time with checks continuously flowing in from local businesses, the
    account was closed by Mendo-Lake Credit Union.  Betty Cheeks was eventually
25  remanded in Court and booked at the county jail for the above offenses.

26  CT 298-300.

27      **STANDARD OF REVIEW**

28      This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

Mem. of Points and Authorities in Opp. to Petition for Writ of Habeas Corpus - Cheeks v. People - C 07-6291 SI

(AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A decision constitutes an unreasonable application of Supreme Court law only if the state court's application of law to the facts is not merely erroneous, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The petitioner bears the burden of showing that the state court's decision was unreasonable. *Visciotti*, 537 U.S. at 25.

## ARGUMENT

### THE STATE COURT REASONABLE REJECTED PETITIONER'S CLAIM THAT HER SENTENCE VIOLATED HER RIGHT TO JURY TRIAL PURSUANT TO *CUNNINGHAM* AND *BLAKELY*

Petitioner reasserts that the imposition of the aggravated term for welfare fraud deprived her of her Sixth Amendment right to jury trial and due process. There is no merit to her claim.

In imposing sentence, the trial court chose the welfare fraud count as the base term, and imposed the upper term of three years.[4/] The court identified several aggravating factors to support imposition of this term: petitioner suffered numerous (13) prior convictions, she served prior prison terms, she was on probation when the instant offense occurred, and she was not successful on probation. RT III 48.

In rejecting petitioner's claim, the California Court of Appeal recognized that the "controlling principle" was announced by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (*Apprendi*): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Exh. L at 2. The Court further explained that in

---

4. Sentence on the remaining counts were consecutive to the base term, and all one-third the mid-term. Petitioner did not contest the imposition of these consecutive terms.

*Blakely v. Washington*, 542 U.S. 296 (2004), "the court clarified that, for *Apprendi* purposes, the 'statutory maximum' is 'not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.'" Exh. L at 2, emphasis in original.

The state appellate court explained that *Blakely* "raised concerns about the constitutionality of California's Determinate Sentencing Law (DSL)" (*id.*), which the California Supreme Court attempted to resolve in *People v. Black*, 35 Cal.4th 1238 (2005), which concluded that under the California law, "the upper term is the 'statutory maximum' and and a trial court's imposition of an upper term sentence does not violate a defendant's right to a jury trial under the principles set forth in *Apprendi*, *Blakely*, and [*United States v.*] *Booker* (2005) 543 U.S. 220]. (*Black*, *supra*, 35 Cal.4th at p. 1254.)" Exh. L at 2-3.

The Court of Appeal then recognized the United States Supreme Court rejected *Black*, but held that petitioner's sentence was nevertheless proper:

> However, in *Cunningham*, the United States Supreme Court held that California's DSL does violate the constitutional principle embodied in the *Apprendi* rule. *Cunningham* held that the DSL, "by placing sentence-elevating fact-finding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." (127 S.Ct. at p. 860.) The court reasoned that, under the DSL, the middle term not the upper term is the relevant statutory maximum because (1) an upper term sentence can be imposed only if the judge finds aggravating circumstances, and (2) aggravating circumstances "depend on facts found discretely and solely by the judge." Furthermore, the court found, "[b]ecause circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence not beyond a reasonable doubt, . . . the DSL violates *Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation.]" (*Id.* at p. 868.)

> However, here the trial court specifically noted, in imposing the upper term sentence, that appellant had "a significant criminal history," and identified four aggravating factors under California Rules of Court, rule 4.421, namely, her 13 prior convictions, her service of several prior prison terms, and the fact that she was on probation at the time of the instance offenses and, previously, had been unsuccessful while on probation.

> The requirement that a fact that increases a sentence beyond the statutory maximum must be found by a jury does not apply to the fact of a prior conviction. (*Almendarez-Torres v. Untied States* (1998) 523 U.S. 224; *Apprendi*, *supra*, 530 U.S. at pp. 488, 490; *Blakely*, *supra*, 542 U.S. at p. 301; *Cunningham*, *supra*, 127 S.Ct. at p. 860.) This prior conviction exception to the *Apprendi* rule has been construed broadly to apply not just to the fact of the prior conviction, but to other issues relating to the defendant's recidivism. (See, e.g., *People v. Thomas* (2001) 91 Cal.App.4th 212, 216-223.)

1

      In our view, the several aggravating factors relied upon by the court to impose the upper term clearly fell within the prior conviction exception to the *Apprendi* rule. [Fn.]

2

Further, those prior conviction aggravating factors did not in any way "'relate to the commission of the offense, but goes to the punishment only . . . .'" (*Almendarez-Torrez*

3

*v. United States*, *supra*, 523 U.S. at p. 244, italics omitted.)  Therefore, these factors did not need to be supported by jury findings.

4

5

      Accordingly, we conclude that imposition of the aggravated term in this case did not violate appellant's federal constitutional right to a jury trial under the Sixth Amendment

6

or [her] right to due process under the Fourteenth Amendment as explicated in *Blakely*, *Supra*, 542 U.S. 296 and *Cunningham*, *supra*, 127 S.Ct. 856.

7

Exh. L at 3-4.

8

      In a footnote, the Court of Appeal noted that the fact that petitioner was on probation when

9

she committed the instant offenses also fell within the prior conviction exception to the *Apprendi*

10

rule since it was a fact that could also be established by a review of the court record relating to the

11

prior offense.  However, the Court of Appeal stated that since the trial court did not specifically rely

12

on that factor in imposing the upper term, it was not relying on that factor.  Exh. L at 4, fn. 1.

13

      The state court's decision to uphold petitioner's upper term sentence was reasonable

14

because the sentence was based on recidivist factors.  While the Supreme Court said in *Cunningham*

15

that imposition of the upper term based on an aggravating factor not found by the jury violates the

16

Sixth Amendment, the Court retained an important exception—a defendant's prior convictions.

17

*Cunningham* 127 S. Ct. at 860, 863-64, 868.  The Court continued to recognize in *Cunningham*, as

18

it did in prior cases, that selection of a sentence based on a defendant's prior convictions does not

19

violate the Sixth Amendment.  *Id.*; *accord Blakely*, 542 U.S. at 301; *Apprendi*, 530 U.S. at 490;

20

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

21

      Here, the trial court specifically relied on petitioner's 13 prior convictions and her prior

22

prison terms for imposing the aggravated term.  This was proper under *Blakely* and *Cunningham*.

23

      The trial court further relied on petitioner's status as a probationer at the time of the instant

24

offenses and her lack of success on probation.  RT III 48.  We submit that these factors were also

25

proper under *Blakely* and *Cunningham*.  Although the United States Supreme Court has never

26

defined the scope of the prior conviction exception, a review of circuit case law shows that it was

27

reasonable to conclude that the exception includes the type of findings that the state trial court made

28

in the present case.  For example, the Second Circuit Court of Appeals has held that the prior

1  conviction exception allows a trial court to find "not only the mere fact of previous convictions but

2  other related issues as well.  Judges frequently must make factual determinations for sentencing, so

3  it is hardly anomalous to require that they also determine the 'who, what, when, and where' of a

4  prior conviction." *United States v. Santiago*, 268 F.3d 151, 156 (2nd Cir. 2001); *see United States*

5  *v. Fagans*, 406 F.3d 138, 141-42 (2nd Cir. 2005) ("the type and length of a sentence imposed seem

6  logically to fall within this exception.")  The Eighth Circuit Court of Appeals has held that the prior

7  conviction exception applies to "sentencing-related circumstances of recidivism," and has agreed

8  with the Second Circuit's opinion in *Santiago* "that it is entirely appropriate for judges to have 'the

9  task of finding not only the mere fact of previous convictions but other related issues as well.'"

10  *United States v. Kempis-Bonola*, 287 F.3d 699, 703 (8th Cir. 2002).  The Tenth Circuit Court of

11  Appeals has held that "the 'prior conviction' exception extends to 'subsidiary findings' such as

12  whether a defendant was under court supervision when he or she committed a subsequent crime."

13  *United States v. Corchado*, 427 F.3d 815, 820 (10th Cir. 2005).

14          Several state courts of last resort have held that the prior conviction exception includes

15  the type of findings that the state trial court made in the present case.  The California Supreme Court

16  has indicated that the exception goes beyond the mere fact of a prior conviction to include matters

17  such as the sentence imposed and the status and timing of the defendant's incarceration in relation

18  to subsequent offenses.  *People v. McGee*, 38 Cal. 4th 682, 700-03, (2006), *citing with approval*

19  *People v. Thomas*, 91 Cal. App. 4th 212, 221-22 (2001).  The Maryland Court of Appeals also has

20  observed that the prior conviction exception "is not limited solely to prior convictions.  The general

21  rule is that there is no right to a jury trial on matters related to the broader issue of recidivism." *State*

22  *v. Stewart*, 791 A.2d 143, 151-52 (Md. 2002).  The Supreme Courts of Washington, Connecticut,

23  Indiana, and Minnesota have held that the prior conviction exception includes the issue of whether

24  the defendant was on probation at the time of the current offense.  *See State v. Jones*, 149 P.3d 636,

25  640-41 (Wash. 2006); *State v. Fagan*, 905 A.2d 1101, 1121 (Conn. 2006); *Ryle v. State*, 842 N.E.2d

26  320, 323-25 (Ind. 2005); *State v. Allen*, 706 N.W.2d 40, 47-48 (Minn. 2005).  As the Washington

27  Supreme Court explained, "the prior conviction exception encompasses a determination of the

28  defendant's probation status because probation is a direct derivative of the defendant's prior criminal

1  conviction or convictions and the determination involves nothing more than a review of the

2  defendant's status as a repeat offender." *Jones*, 149 P.3d at 640.

3        In any case, under California law, a single aggravating factor is sufficient to render a

4  defendant *eligible* for the upper term.  *People v. Osband*, 13 Cal. 4th 622, 728 (1996); *see also*

5  *People v. Black*, 35 Cal. 4th at 1255 (California Penal Code section 1170(b) mandates "that the

6  middle term be imposed unless an aggravating factor is found").  Hence, a trial court's finding of

7  a single aggravating factor circumstance based on the defendant's criminal history falls within the

8  recidivism exception to the jury-trial requirement and is sufficient to authorize the imposition of an

9  upper term sentence under the Sixth Amendment.  *See generally Cunningham*, 127 S. Ct. at 865 (the

10  constitutional test focuses on the judge's "authority" to impose an enhanced sentence).

11        Here, the trial court's reliance on petitioner's numerous prior convictions and prison terms

12  were sufficient to authorize the imposition of the upper term.

13        Accordingly, the state court's imposition of the upper term was not "contrary to" or "an

14  unreasonable application of," clearly established Supreme Court precedent.  Petitioner's Sixth

15  Amendment and due process claim must be rejected.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CONCLUSION**

2         WHEREFORE, respondent respectfully submits that the order to show cause be

3  discharged, the petition for writ of habeas corpus be denied, and this action be dismissed.

4         Dated:  May 6, 2008

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                              Attorney General of the State of California

7                              DANE R. GILLETTE
                              Chief Assistant Attorney General

8                              GERALD A. ENGLER
                              Senior Assistant Attorney General

9
                              PEGGY S. RUFFRA
10                             Supervising Deputy Attorney General

11

12                             /s/ Sharon G. Birenbaum
                              SHARON G. BIRENBAUM
13                             Deputy Attorney General

14                             Attorneys for Respondent

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mem. of Points and Authorities in Opp. to Petition for Writ of Habeas Corpus - Cheeks v. People - C 07-6291 SI